# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARA BANO, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 17-2296 |
| | : | |
| MICHAEL R. POMPEO, *et al.*, | : | |
| *Defendants.* | : | |

## OPINION

### I.  INTRODUCTION

In this immigration matter, Plaintiff's husband, an alien, was denied an immigration visa on terrorism grounds. The Consular Officers that denied Plaintiff's husband's visas only cited the statute that bans aliens from entry into the United States on terrorism grounds. Because of the nature of this case, the disposition of Defendants' (collectively, the "Government") Motion to Dismiss, which is currently before the Court, is controlled by Justice Kennedy's concurring opinion in *Din v. Kerry*, 135 S. Ct. 2128 (2015).

### II.  BACKGROUND

A. Allegations in Plaintiff's Complaint

Plaintiff, Sarah Bano, a United States citizen, filed an I-130 Immigration Petition on behalf of her husband, Mohammad Khalid Jahangir, on May 22, 2006. ECF No. 27 at 1, 7. Plaintiff's husband is a citizen of Pakistan. *Id.* at 1. Plaintiff's

1

I-130 Petition was approved by the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 7. After approval by the USCIS, the matter was forwarded to the United States Embassy in Islamabad, Pakistan on or around February 13, 2007. *Id.* On August 31, 2011, the United States Department of State informed Plaintiff that the matter remained in administrative processing. *Id.* at 8. On June 4, 2013, the Department of State again informed the Plaintiff that the matter remained in administrative processing. *Id.* In June 2013, the United States Embassy in Islamabad requested a medical exam of Plaintiff's husband, form DS-230, and photographs from the Plaintiff. *Id.* These were all provided. *Id.* On July 10, 2014, the Department of State informed the Plaintiff that the matter remained in administrative processing. *Id.* On November 23, 2015, the United States Embassy again requested a medical exam of Plaintiff's husband, photos, and form DS-260 from the Plaintiff. *Id.* Plaintiff provided these documents on November 30, 2015. *Id.* On July 12, 2016, August 30, 2016, September 2, 2016, October 24, 2016, January 25, 2017, and March 24, 2017, the United States Embassy informed Plaintiff that the matter remained in administrative processing. *Id.* at 8-9.

On May 18, 2017, Plaintiff filed a Writ of Mandamus to seek a decision on her husband's I-130 Petition. *Id.* at 9. On August 11, 2017, the United States Embassy in Islamabad denied Plaintiff's I-130 Petition and cited INA §

212(a)(3)(B) (8 U.S.C. § 1182(a)(3)(B)[1]) as the basis for the denial, which bars admission to individuals associated with terrorism. *Id.* This was the only explanation provided by the Consular Officer as to why the Petition was denied. After Plaintiff's first I-130 Petition was denied, Plaintiff filed a second I-130 Immigration Petition. On May 7, 2018, the United States Embassy interviewed Plaintiff's husband on the second I-130 Petition. *Id.* at 10. On December 12, 2018, Plaintiff's second I-130 Petition was denied, and the Consular Officer again only cited § 1182(a)(3)(B) as the basis for the denial. *Id.* After the denial of the second I-130 Petition, Plaintiff filed her Second Amended Complaint[2] on January 7, 2019.

In her Complaint, Plaintiff alleges that the Government never confronted her husband with any statement or allegation of association with terrorism prior to the Consular Officers issuing the denials on terrorism grounds. *Id.* Plaintiff also contends that the Government never explained why it took ten years to issue its denial of the first I-130 Petition and then base the denials on the ground of inadmissibility related to terrorism. *Id.* at 11. Plaintiff alleges that the Government's denial of her I-130 Petitions was a violation of her Due Process

---

[1] The Court will hereinafter refer to this Statute using the citation § 1182(a)(3)(B).
[2] Plaintiff filed her original Complaint on May 18, 2017 (in the form of a Writ of Mandamus). ECF No. 1. After the first I-130 Petition was denied, Plaintiff filed an Amended Complaint. ECF No. 14. On December 18, 2018, the Court approved a stipulation between the parties that allowed Plaintiff to file a Second Amended Complaint to encompass the second I-130 Petition denial. ECF No. 26.

3

rights because the Consular Officers only cited § 1182(a)(3)(B) as the basis for the denials. *Id.* Moreover, because the Consular Officers did not provide any factual basis for the denials (other than the citation to § 1182(a)(3)(B)) and because it took ten years to make the first decision, Plaintiff alleges that the denials were made in bad faith. *Id.* at 12. Secondly, Plaintiff alleges that the denials were in bad faith because they were issued in retaliation against her for filing the Writ of Mandamus. *Id.*

Plaintiff's Complaint sets forth five causes of action. Count I is a due process violation under the Fifth Amendment. *Id.* at 11. Count II is an APA violation. *Id.* at 13. Count III is for injunctive relief. *Id.* at 18. Count IV is for declaratory relief. *Id.* at 19. Count V is for attorneys' fees and costs pursuant to 28 U.S.C. § 2412. *Id.* at 20.

B. The Government's Motion to Dismiss

On January 17, 2019, the Government filed its Motion to Dismiss. It filed a Reply to Plaintiff's Response on February 26, 2019. The Government sets forth three arguments in support of its Motion to Dismiss.[3] First, it contends that any due process owed to Plaintiff was satisfied when it cited 8 U.S.C. § 1182(a)(3)(B) as the basis of denials for Plaintiff's husband. ECF No. 28 at 11; ECF No. 32 at 3. Because the Due Process Clause was satisfied, the Government contends that the

---

[3] The Government's Motion to Dismiss is pursuant to Fed. R. Civ. P. 12(b)(6), only. ECF No. 32 at 1.

4

Court cannot now "look behind" the exclusion. ECF No. 32 at 3. In support of this argument, the Government relies on Justice Kennedy's concurring opinion in *Din v. Kerry*, 135 S. Ct. 2128 (2015). *See generally* ECF No. 28; ECF No. 32. Second, it argues that the Administrative Procedure Act ("APA") does not apply because it does not provide an avenue for a court to review a consular officer's denial of a visa on the merits. ECF No. 28 at 14-15; ECF No. 32 at 7. Third, the Government argues that Plaintiff does not allege with sufficiently particularity that the it reached its decisions in bad faith. ECF No. 28 at 16-18; ECF No. 32 at 4-6.

Plaintiff filed her Response to the Government's Motion to Dismiss on February 4, 2019. First, Plaintiff argues that the Consular Officers did not provide a facially legitimate and bona fide reason for the denials of her husband's visas. ECF No. 30 at 2-3. Second, Plaintiff argues that the APA does not bar this Court from reviewing the Consular Officers' decisions. *Id.* at 4-6. Third, if this Court finds that a citation to a statute satisfies the Due Process Clause and is a facially legitimate and bona fide reason for a denial, Plaintiff argues that she has sufficiently pled bad faith. *Id.* at 3-4. Plaintiff cites the ten years it took the Consular Officer to make the decision on her husband's first visa Petition and the denial being issued after Plaintiff filed a Writ of Mandamus. *Id.* at 6-8. Plaintiff notes that the Supreme Court in *Din* was not confronted with a bad faith allegation. *Id.* at 4.

5

On March 4, 2019, this Court heard oral argument on the Government's Motion to Dismiss. At argument, Plaintiff continued to argue that a "check of a box" was not a facially bona fide reason for the denials. ECF No. 34 at 4. Plaintiff attempted to distinguish the Supreme Court's holding in *Din* from this matter by arguing that the denial in *Din* was justifiable because it was known that the alien, there, had a connection to the Taliban, but, here, no evidence was produced linking Plaintiff's husband to any terroristic activities. *Id.* In regard to the APA being applicable to this matter, Plaintiff argued that it was not the Consular Officers who decided to deny Plaintiff's husband a visa, instead the decision was made by the Department of Homeland Security, making the denials an agency decision that is reviewable under the APA. *Id.* at 5-6.

Plaintiff also argued that the ten years it took the Consular Officer to issue the first decision in this matter, while never mentioning any terroristic activity by Plaintiff's husband throughout the process, is a reason why the Court should review the Consular Officers' denials. *Id.* at 12. Without any evidence of terroristic activity being produced, Plaintiff contended that she is simply seeking the Court's intervention to determine why her husband was denied a visa petition on national security grounds. *Id.* at 12-13.

The Government, at oral argument in support of their Motion, argued that the additional facts in *Din* were irrelevant to Justice Kennedy's ultimate conclusion

that a checking of a box to a statutory citation is sufficient as far as due process is concerned. *Id.* at 7. Addressing Plaintiff's APA argument, the Government argued that the Homeland Security Act makes clear that the ultimate decision maker, in these situations, is the consular officer and the Secretary of State cannot interfere with these decisions. *Id.* at 9. The Government also directed the Court's attention to the record in this matter, which clearly demonstrates that both notices of denial were signed by Consular Officers. *Id.* With regard to reviewability of a consular officer's denial, the Government argued that circuit courts have consistently held that the APA cannot act as a mechanism for a court to review a consular officer's denial of a visa petition. *Id.* at 10. The Government also argued that a consular officer should not be required to produce evidence as to why someone was found to be associated with terrorism, as this would be harmful for national security purposes. *Id.* at 14. Finally, the Government contended that the time period it took the Consular Officers to make a decision in this matter is commonplace in the immigration system and courts have encountered similar delays only to find that the delay was not evidence of bad faith. *Id.* at 16.

## III. DISCUSSION

### A. *Din v. Kerry* and Due Process

In *Din v. Kerry*, the respondent, Fauzia Din, who was a citizen and resident of the United States, alleged that the Government violated her constitutional rights

7

when the Government denied her alien husband's visa application with no explanation other than a citation to 8 U.S.C. § 1182(a)(3)(B). 135 S. Ct. at 2139. The majority of the Court held that there was no constitutional violation by the Government. Justice Scalia, writing for himself, the Chief Justice, and Justice Thomas held that a citizen spouse is not deprived of life, liberty, or property when the Government denies her alien spouse's visa application. *Id.* at 2138. Therefore, "there is no process due to her under the Constitution." *Id.* Justice Scalia further noted that "[t]o the extent that [Din] received any explanation for the Government's decision, this was more than the Due Process Clause required." *Id.*

Justice Kennedy, writing for himself and Justice Alito in a concurring opinion joined the majority, and stated:

> Today's disposition should not be interpreted as deciding whether a citizen has a protected liberty interest in the visa application of her alien spouse. The Court need not decide that issue, for this Court's precedents instruct that, even assuming she has such an interest, the Government satisfied due process when it notified Din's husband that his visa was denied under the immigration statute's terrorism bar, § 1182(a)(3)(B).

*Id.* at 2139. Specifically, Justice Kennedy held that "the Government satisfied any obligation it might have had to provide Din with a facially legitimate and bona fide reason for its actions when it provided notice that her husband was denied admission to the country under § 1182(a)(3)(B)." *Id.* at 2141. Nothing further is

required of the Government. *Id.* Justice Kennedy makes clear that the holding is controlled by *Kleindienst v. Mandel*, 408 U.S. 753 (1972). *Id.* at 2139.

When a court is confronted with a Supreme Court plurality decision, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United* States, 430 U.S. 188, 193 (1977) (internal quotations and citations omitted). More recently, the Third Circuit Court of Appeals clarified the Supreme Court's holding in *Marks* by holding that a justice who joins the majority, but writes separately and "assuredly narrow[s] what the majority opinion holds, by explaining the more limited interpretation" of the majority, is the "least common denominator necessary to maintain a majority opinion." *B.H. v. Easton Area School Dist.*, 725 F.3d 293, 310 (3d Cir. 2013) (internal quotations omitted) (citing *McKoy v. North Carolina*, 494 U.S. 433, 462 (1990)).

In *Din*, Justice Kennedy and Justice Alito join the majority, but write separately through Justice Kennedy. Specifically, the majority broadly holds that there was no due process due to Din under the Constitution, and any explanation given by the Government was more than the Due Process Clause required. *Din*, 135 S. Ct. at 2138. Justice Kennedy agrees with the majority that the case should be vacated and remanded; however, Justice Kennedy assumes, without deciding, that Din had a liberty interest protected by due process but held that that the

9

Government's explanation for its decision satisfied due process. *Id.* at 2141. Justice Kennedy's opinion, therefore, narrows the majority's holding, while explaining the more limited interpretation adopted by the majority. For these reasons, this Court finds Justice Kennedy's concurring opinion in *Din* to be controlling. Although the Third Circuit Court of Appeals has not addressed whether it finds Justice Kennedy's concurring opinion to be controlling, other Courts of Appeals have held that Justice Kennedy's concurring opinion is controlling.[4] *See Allen v. Milas*, 896 F.3d 1094, 1106 (9th Cir. 2018) ("Justice Kennedy, joined by Justice Alito, concurred in the judgment alone, in the narrowest and thus controlling opinion in that case."); *International Refugee Assistance Project v. Trump*, 857 F.3d 554, 590 n.15 (4th Cir. 2017) ("We agree that Justice Kennedy's opinion sets forth the narrowest grounds for the Court's holding in *Din* and likewise recognize it as the controlling opinion.").

In the instant matter, because Justice Kennedy's holding in *Din* is controlling on the Court, the Court finds that the Consular Officers satisfied the Due Process Clause when they denied Plaintiff's husband's I-130 Immigration Petitions and only cited § 1182(a)(3)(B). Nothing more is required of the Government. Moreover, although the alien in *Din* was known to have connections

---

[4] The Court notes that the Seventh Circuit Court of Appeals has declined to adopt any opinion in *Din*. *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019).

with the Taliban, that fact was not a deciding factor for Justice Kennedy's finding that the Government's citation to § 1182(a)(3)(B) was a bona fide basis for the denial. *See Din*, 135 S. Ct. at 2141. Had that fact not existed in *Din*, the outcome would have remained the same. Nowhere in *Din* is it suggested that there needs to be evidence in the record of an alien's association with terroristic activities for a citation to § 1182(a)(3)(B) to be sufficient. Therefore, even though there is no evidence in the record of Plaintiff's husband being associated with terroristic activities, the Consular Officers' citations to § 1182(a)(3)(B) are adequate to satisfy any due process concerns. In accordance with *Din*, a citation to § 1182(a)(3)(B), alone, is a legitimate and bona fide basis for a denial of a visa petition.

B. APA

Plaintiff relies on *Morfin v. Tillerson*, 851 F.3d 710 (7th Cir. 2017) for the proposition that the APA does not bar review in this matter. Plaintiff's reliance on *Morfin* is unfounded, however. In *Morfin*, the Seventh Circuit Court of Appeals found that the district court's dismissal of the suit for *lack of subject matter jurisdiction* was a misstep, but still affirmed the dismissal. *Id.* at 711, 714 (emphasis added). The Seventh Circuit stated that district courts retain subject matter jurisdiction to review whether the government acted properly; however, "the fact remains that for more than a hundred years courts have treated visa

11

decisions as discretionary and not subject to judicial review for substantial evidence and related doctrines of administrative law." *Id.* at 711. The Seventh Circuit affirmed the district court, even though the lack of subject matter dismissal was a misstep, because "the denial of a visa application is not a question open to review by the judiciary." *Id.* at 714. The Seventh Circuit modified the district court's judgment "to reject plaintiff's claims on the merits rather than for lack of jurisdiction." *Id.* Contrary to Plaintiff's contention, *Morfin* does not hold that the APA provides an avenue for courts to review a consular officer's decision. In fact, *Morfin* supports the Government's position that a consular officer's denial of a visa application cannot be reviewed by a district court if there was a bona fide basis for the denial.

Plaintiff's argument that the Consular Officers' denials were in reality decisions made by the Department of Homeland Security, invoking the APA, is equally unfounded. There is not a scintilla of evidence in the record to suggest that the Department of Homeland Security or the Department of State forced the Consular Officers to deny the I-130 Petitions on terrorism ground. The decisions were made by Consular Officers and Plaintiff cannot direct the Court to any credible evidence that would suggest otherwise; therefore, the APA does not provide an avenue for reviewability of the Consular Officers' decisions.

C. Bad Faith

The final issue is whether Plaintiff sufficiently pled that the Consular Officers reached their decisions in bad faith. According to Plaintiff, she sufficiently pled bad faith, which allows this Court to review the Consular Officers' denials and allow this matter to proceed to discovery. According to Justice Kennedy in *Din*, "[a]bsent an *affirmative showing of bad faith* on the part of the consular officer . . . *Mandel* instructs us not to 'look behind' the Government's exclusion . . . for additional factual details beyond what its express reliance on § 1182(a)(3)(B) encompassed." *Din*, 135 S. Ct. at 2141 (emphasis added). Plaintiff alleges bad faith in two aspects. First, she alleges that the Government failed to produce any evidence of her husband being associated with terrorism throughout the entire process of the I-130 Petitions. Second, Plaintiff relies on the ten-year time period it took the Consular Officer to make the first decision and the allegation that the denials were made in bad faith because she filed a Writ of Mandamus.

These allegations by Plaintiff are not an "affirmative showing of bad faith." Plaintiff has not produced any case law that requires the Government to produce evidence during an I-130 petition review of an alien's association with terrorism. Contrary to Plaintiff's position, it would be a national security concern if consular officers were required to produce evidence on why someone was denied a visa for

13

being a terrorist. *See Din*, 135 S. Ct. at 2141. Plaintiff's assertion that the ten-year delay is a sufficient factual showing of bad faith is equally unfounded. During this ten-year period, the Government sent repeated requests to Plaintiff and her husband for documents and certain information. Plaintiff does not suggest, because there are no facts to support such a suggestion, that the Government idly reviewed Plaintiff's I-130 Petition and only denied the Petition for frivolous and unfounded reasons. Moreover, Plaintiff's argument that the denials being made after she filed her Writ of Mandamus does not demonstrate any bad faith. When the Writ of Mandamus was filed, Plaintiff was asking the Government to make a decision on her husband's visa Petition and the Government did exactly what the Plaintiff request, *i.e.*, it made a decision. Plaintiff not agreeing with the decision cannot be a basis for a bad faith allegation. There being no "affirmative showing of bad faith" this Court cannot review Plaintiff's husband's visa denials.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Accordingly, Plaintiff's Complaint is dismissed. An accompanying order to follow.

Dated: 3-27-2019

BY THE COURT:

CHAD F. KENNEY, JUDGE